108 So.2d 454

**Ex parte Charles W. WILLIAMS.**

**Charles W. WILLIAMS**

v.

**STATE of Alabama.**

**7 Div. 302.**

Supreme Court of Alabama.

Oct. 9, 1958.

Rehearing Denied Feb. 12, 1959.

Charles W. Williams, petitioner, pro se.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

COLEMAN, Justice.

In April, 1950, in the Circuit Court of Shelby County, the petitioner, Charles W. Williams, was convicted of murder in the first degree and sentenced to life imprisonment. After motion for new trial was denied petitioner appealed to this court and the judgment of conviction was affirmed. Williams v. State, 255 Ala. 229, 51 So.2d 250.

The instant proceeding was instituted by filing in this court a petition for leave to file in the Circuit Court of Shelby County an application for writ of error coram nobis in the above mentioned cause. The judgment of conviction having been here affirmed, the procedure is proper. Ex parte Lee, 248 Ala. 246, 27 So.2d 147; Brown v. State, 250 Ala. 444, 35 So.2d 518.

We have considered carefully and in detail all the exhibits accompanying the petition filed in this court, as well as the record of the trial filed here on appeal. Altogether the exhibits and record consist of more than 1600 typewritten pages, and include a transcript of testimony on preliminary hearing and also on a mistrial of this cause in January, 1950, a 238 page autobiography of petitioner, and his 343 page brief.

Petitioner has discussed all the testimony presented on the three trials of his case and has argued and meticulously pointed out discrepancies, inconsistencies, and contradictions which do exist in the three records. In his brief, petitioner asserts that he was denied a fair trial and was deprived of his liberty without due process of law in violation of the guaranties of the Con-

stitution. In pertinent part the brief recites:

"* * * The verdict, 'Guilty, A life Sentence', registered the jury's choice. Petitioner admits the jury could have made no other choice under the circumstances. But the records were erroneous and incorrect in each and every damnifying entry, the seven witnesses were honestly mistaken or wilfully and purposefully wrong in each and every damnifying statement, and the one, defendant, was right."

Petitioner's argument is that his denial of due process resulted from a conspiracy against him and that he was convicted on perjured testimony knowingly used by the State. With reference to the alleged perjuries, the brief of petitioner recites:

"Moreover, a step-by-step, and circumstance-by-circumstance, examination and analysis of the Solicitor's 'conscious guilt' trial techniques in January, of his 'big lie' techniques in April; of why he *changed* his technique and *why he chose* the technique used in April; lead to the inescapable conclusion (were there no factual evidence foreclosing the same conclusion) that the Solicitor and/or other officers of the court had knowledge of the misrepresentations, half truths, distortions, untruths and outright perjuries contained in the testimony of King, Thurmond, Allen, W. F. Robertson and Frankie Swalley; had knowledge of the invalidity and fraudulence of the damnifying portions of the State's evidence, and that they were doing violence to every concept of justice in their use of such evidence (See Transcripts of January and April);"

This court has said:

"It is well settled that a defendant who has been convicted of a criminal offense cannot obtain the nature of relief which is here sought on account of false swearing of witnesses, unless such perjured testimony was used by the State in the prosecution of the case with knowledge that it was perjured testimony. Ex parte Burns, 247 Ala. 98, 22 So.2d 517; Brown v. State, 250 Ala. 444, 35 So.2d 518; Pike v. State, 103 Fla. 594, 139 So. 196; Yon v. State, 138 Fla. 770, 190 So. 252." Ex parte Gammon, 255 Ala. 502, 505, 52 So.2d 369, 370.

"However, if the basis of the conviction of petitioner was perjured testimony which was knowingly used by the prosecuting authorities in order to obtain that conviction, then petitioner was not accorded the due process to which he is entitled under the Fourteenth Amendment of the Constitution of the United States. Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. This court has recognized the common-law writ of error coram nobis as the appropriate remedy to be followed in such a situation. Johnson v. Williams, 244 Ala. 391, 13 So.2d 683. The procedure, accordingly, in the present instance is proper." Ex parte Burns, 247 Ala. 98, 99, 22 So.2d 517, 518.

 In reviewing a decision of this court on a petition for leave to apply for coram nobis, the rule to govern our consideration of such a petition has been stated by the Supreme Court of the United States as follows:

"In passing upon this request that court (We interpolate: the Supreme Court of Alabama.) was not bound to accept at face value the allegations of the petition. The issue was not submitted to it as though on a demurrer. That court was called upon to decide not only whether this new petition, if true, presented a meritorious ground for setting aside its previous judgment, but that court, in its supervisory capacity over the enforcement of the law, was called upon to determine also the reasonableness of the allegations made

in the petition and the probability or improbability of their truth. * * *.

* * * * * *

"If the new petition and its supporting affidavits stood alone or had to be accepted as true, the issue would be materially different from what it is. The Supreme Court of Alabama, however, read this petition and these affidavits, as we must read them, in close connection with the entire record already made in the case. They must be tested in that context for their reasonableness, the probability of their truth, the effectiveness of the attack they make on the original judgment and their relationship to the general enforcement of law with justice to all." (Parenthesis supplied.) Taylor v. Alabama, 335 U.S. 252, 262, 264, 265, 68 S.Ct. 1415, 1420, 92 L.Ed. 1935.

In accordance with the foregoing principles, we have considered the petition now before us. No useful purpose would be served by here setting out in detail the numerous contentions presented by the petitioner. To do so would extend this opinion to undue length. In so far as the contradictions or inconsistencies in the testimony given at the three trials have any tendency to prove perjury on the part of any witness, the petitioner had the full benefit of those inconsistencies and contradictions at the trial which resulted in his conviction. Petitioner, on this last trial, had opportunity to confront the witnesses with inconsistent statements made on previous trials and, in fact, did so. Petitioner, in presenting his defense, and the jury in reaching a verdict, had full benefit of the instances where the testimony of a witness on the last trial was not the same as testimony previously given.

■ Although petitioner complains of the failure of his counsel to present certain matters to the jury, he acknowledges the competency of his attorneys in Exhibit NE–300, as follows:

"My two attorneys, whose combined talents, legal knowledge, and criminal trial experience is unsurpassed in Alabama—perhaps not equaled in the State—never asked a single question of me, never offered one witness or statement of any kind in denial or disproof of the motive lie alleged by the prosecutors and evidenced by the abandonment decree. *WHY?*"

The record on appeal attests the skill and diligence of petitioner's attorneys, and we are of opinion that petitioner cannot correctly claim that he lacked proper representation at any stage of his trial.

■ Petitioner's exhibits include thirty-odd statements purporting to have been made by persons other than petitioner. Some of these statements are under oath and some are not sworn to, some allegedly were prepared for the signatures of others but were never signed, some of the statements are newspaper clippings. These statements which are presented to this court as new evidence are subject to various objections, as follows: They are hearsay, present matters which were known or by the exercise of due diligence ought to have been known to petitioner at the trial, are mere conclusions of the affiant, are irrelevant, are merely cumulative of facts and issues which were presented on the trial, or are self-serving declarations made by petitioner. Affidavits subject to the foregoing defects are not sufficient to invoke the remedy here sought. The rule has been stated as follows:

"The office of the writ of error coram nobis is to bring to the attention of the court, for correction, an error of fact—one not appearing on the face of the record, unknown to the court or the party affected, and which, if known in season, would have prevented the rendition of the judgment challenged.

"The writ supplements, but does not supersede, the remedy provided in the statute for the granting of new trials or the correction of errors. It is not available where the facts complained of

were known before the trial, and where advantage could have been taken of the alleged error at the trial; nor does it lie to correct an adjudicated issue of fact.

"The remedy cannot be invoked on the ground that an important witness testified falsely about a material issue in the case; nor can newly discovered evidence, going to the merits of the issue tried, be used as a basis for the writ. (Citations omitted.)" Lamb v. State, 91 Fla. 396, 107 So. 535, 538.

In support of petitioner's claim that he was convicted on perjured testimony knowingly used by the State, there appears in this mass of exhibits and records only one particular which calls for comment. To support his insistence that Frankie Swalley gave perjured testimony in identifying petitioner as the man Frankie saw running from the scene of the killing, and that the State used that testimony knowing it was perjured, the petitioner relies on three exhibits, to wit, Exhibits NE–200(11), NE–220, and NE–100.

■ NE–200(11) is a typewritten statement allegedly prepared by petitioner to be sworn to and signed by Mrs. Elizabeth Swalley, widow of the slain and mother of Frankie. This exhibit is not sworn to, is not even signed. It is subject to objection as a self-serving declaration by petitioner and even if sworn to by the purported affiant, would be merely cumulative on an issue presented to the jury on the final trial in that it merely reiterates what seven witnesses testified to at the mistrial in January. The matter in question was the fact that for several days after the killing, Frankie told several witnesses he did not know who the man running from the scene was. The seven witnesses testified, as does this exhibit, that Frankie made such statements either to them or in their presence. The petitioner had full knowledge of the testimony of these witnesses in January before the trial in April. In fact, at the last trial in April, Frankie admitted that on the night his father was shot he, Frankie,

told several persons that he did not know who shot his father. This exhibit presents no new evidence and clearly adds nothing in support of petitioner's right to the leave prayed for.

Exhibit NE–220 is a sworn affidavit of like purport as NE–200(11). NE–220 is hearsay in part, and otherwise is merely cumulative on the issue of Frankie's alleged perjury and subject to the same lack of force as NE–200(11).

■ NE–100 is a statement signed "R. E. 'Buster' Hogan," and attested by one witness. The statement by Hogan is not sworn to. For that reason, if for no other, it is not sufficient to warrant granting the leave applied for by petitioner. An unsworn statement ought not to be the basis for setting aside a judgment of record entered upon a verdict rendered by a jury on sworn testimony admittedly sufficient to support the verdict.

■■ While the petition itself is sworn to and the statement may be treated as incorporated in the petition by reference, the oath of petitioner cannot strengthen the statement. As to petitioner, the exhibit containing the statement is pure hearsay. The statement itself bears none of the accepted guaranties of truth. The statement is ex parte and not fortified by cross-examination of the opposing party. It bears no oath. Moreover, since the statement is not under oath the maker of it does not make himself liable to the penalties for perjury if the statement be untrue.

We do not, however, hold the statement insufficient on this ground alone. Considering it as being sworn to it is subject, nevertheless, to further infirmities. It bears date 5 years and 5 months after the matters narrated in the statement took place. The alleged obligation binding affiant which prevented earlier disclosure of the facts stated is not shown nor does it appear how that obligation was dissolved.

The statement is not definite in designating the officer or officers who had knowl-

540

edge of the alleged falsity of Frankie Swalley's testimony.

> "The charges here are serious and should be specific. There should be nothing which in 'any· way smacks of evasion or generality. The petition should have named the officers alleged to be guilty or should have given a valid excuse for not giving their names." Ex parte Burns, 247 Ala. 98, 100, 22 So.2d 517, 519.

██ We rest our denial of this petition upon the theory that the petition, considered in connection with the record, is insufficient on its face. Laying to one side and disregarding the affidavits filed here by the State, on full consideration of the petition and its exhibits together with the record filed in this court on appeal, we are not of opinion that the averments of the petition alleging that petitioner was denied due process are reasonable or probably true. The petition is, therefore, due to be denied.

Petition denied.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MERRILL, JJ., concur.